UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bishop Wayne R. Felton and The Holy Christian Church International, | Case No. 23-cv-467 (DTS) |
| Plaintiffs, | **ORDER** |
| v. | |
| De'Mario Jives and DeMajio Media LLC, | |
| Defendants. | |

Plaintiffs Bishop Wayne R. Felton and the Holy Christian Church International sued Defendants De'Mario Jives and DeMajio Media LLC for defamation.[1] The day after the parties reached a confidential settlement agreement, Jives published a video claiming victory in the lawsuit. Plaintiffs move for a temporarily restraining order, requesting that Defendants be required to take the video down, abide by the terms of the settlement agreement, and refrain from discussing the settlement conference. For the reasons explained below, Plaintiffs' motion is granted.

## FACTS

Felton is the senior pastor of the Holy Christian Church International (the Church), based out of St. Paul, Minnesota. Felton's Decl. in Supp. ¶ 1, Dkt. No. 31. Plaintiffs brought this action in February 2023, alleging that Jives had published several videos and social media posts "containing wildly false and defamatory accusations against the Bishop—which include everything from an alleged grooming of women in the Church for

---

[1] According to the Complaint, Jives is the founder, sole member, and graphic designer of DeMajio Media. Compl. ¶¶ 9, 23, Dkt. No. 1.

sexual affairs, to covertly and hypocritically engaging in homosexuality, to implied pedophilia, to allegations that the Bishop exiled two female members from the Church because they married Muslim men." Compl. ¶ 3, Dkt. No. 1. The parties reached a confidential settlement on September 11, 2024. *See* Min. Entry, Dkt. No. 27.

Jives hosted a YouTube Live video the morning after the settlement agreement. *See* Felton Decl. in Supp. ¶ 2, Dkt. No. 27. The video is titled "Good Morning. . . . Victory is REAL Sweet!!!" Felton Decl. in Supp. ¶ 5, Dkt. No. 31. During that video, Jives repeatedly declared victory. *See* Felton Decl. in Supp. Ex. C, at 11, Dkt. No. 31-2 ("I'm telling you hear me the report is Victory."), 13 ("I got Victory baby you know what I'm saying baby."), 20 ("[I]f you got the victory you ought to give God a victory dance."). Despite stating in the video that "everything that was done [at the settlement conference] was confidential," *id.* at 19, Jives told his viewers that he did not need to pay anything to settle the case, *id.* at 6 ("I ain't got to pay no money."), 8 ("[Y]ou know everybody's paying their own stuff.").

There's more. In the video, Jives claimed that the judge was irritated with Felton "because [the judge] saw everything." *Id.* at 9. He also said, "you can inbox me and I'll tell you," indicating that viewers could reach out directly for more information about the settlement. *Id.* at 11. And his comments suggest that several people watched or listened to the confidential settlement conference. *See, e.g.*, *id.* at 3 ("I'm so glad my mods were able to hear um and there were a few people that were able to actually see um but I have everything documented."), 9 ("[S]ome of Jive nation was there."). Other statements in the video associated Felton with the devil. *E.g.*, *id.* at 6 ("[T]he devil was mad."), 24 ("[T]he devil can't win honey.").

2

After learning about the video, Plaintiffs moved for a temporary restraining order. The Court held a hearing on September 13, 2024. Defendants' counsel was notified of the hearing by email and attended the hearing by telephone. Defendants did not object to the Court granting Plaintiffs' motion at this hearing, agreeing to stipulate to a temporary injunction for thirty days or until further order of the Court. Although Defendants' stipulation is alone enough to grant the motion, Plaintiffs' motion is also granted on the merits.

## ANALYSIS

### I.     Standard

Federal Rule of Civil Procedure 65 authorizes courts to grant injunctive relief in the form of a temporary restraining order or preliminary injunction. By its terms, Rule 65(b) only governs temporary restraining orders issued without notice or a hearing. That's not the case here—Defendants have received both notice and a hearing, although on a highly expedited basis. It has been argued that Rule 65(b)'s provisions should apply, at least with regard to duration, when "time constraints do not allow the parties to prepare adequately for a hearing." *See* 11A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure: Civil* § 2951 (3d ed. June 2024 update). But applying Rule 65(b)(2)'s fourteen-day limitation would not make sense here given Defendants' stipulation to a thirty-day injunction at the hearing. In short, Plaintiffs' motion is better construed as an expedited preliminary injunction governed by Rule 65(a) rather than an *ex parte* temporary restraining order governed by Rule 65(b).

The Eighth Circuit's *Dataphase* decision describes the four factors to consider when deciding whether to grant injunctive relief: "(1) the likelihood of the movant's

success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 956 (D. Minn. 1999) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112–14 (8th Cir. 1981) (en banc)). "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018).

### A.    Merits

Start with the first *Dataphase* factor, likelihood of success on the merits. "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). For this factor to favor them, Plaintiffs must demonstrate that they have a "fair chance of prevailing." *Lamplighter Vill. Apartments LLP v. City of St. Paul*, 534 F. Supp. 3d 1029, 1034 (D. Minn. 2021) (quoting *Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). This standard does not require the movant to show "a greater than fifty percent likelihood that he will prevail on the merits." *Rounds*, 530 F.3d at 731 (quoting *Dataphase*, 640 F.2d at 113). According to Plaintiffs, the underlying claims are Defendants' breach of the settlement agreement and breach of the Court's instructions requiring confidentiality. Pls.' Mem. in Supp. at 12, Dkt. No. 29.

Under Minnesota law, "settlement agreements are governed by principles of contract law." *Rosenbloom v. Gen. Nutrition Ctr., Inc.*, No. 09-cv-1582, 2010 WL 1050297, at *2 (D. Minn. Mar. 18, 2010). Therefore, an action to enforce a settlement agreement "is a claim for breach of contract[.]" *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir.

4

2005). A Minnesota breach-of-contract claim consists of four elements: "(1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages." *Fiecke-Stifter v. MidCountry Bank*, No. 22-cv-3056, 2023 WL 5844758, at *5 (D. Minn. Sept. 11, 2023) (quoting *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D. Minn. 2006)).[2] Take each element in turn.

(1) The parties memorialized their settlement agreement at the conclusion of a settlement conference. *See* Min. Entry, Dkt. No. 27. Such settlements are enforceable. *See, e.g.*, *Turner v. Otis Elevator Co.*, No. 21-cv-203, 2023 WL 2424272, at *4 (D. Minn. Mar. 9, 2023). (2) A condition precedent "is any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract." *Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176 (Minn. 1989). The settlement agreement does not contain a condition precedent to Defendants' settlement obligations. *See* Felton Decl. in Supp. Ex. A, at 2–3, Dkt. No. 36. (3) Those obligations include to not "make any further posts, statements, or other content concerning or related to Bishop Felton, his family, or the Church." *Id.* § 1(b). Moreover, all parties were prohibited from breaching the confidentiality of the settlement agreement. *Id.* § 2(c). The video—declaring victory in the lawsuit and associating Felton with the devil—is likely content related to Felton. And, at minimum, statements that Jives was not required to pay anything likely breached the confidentiality provision of the settlement agreement. (4) As for damages, Felton's declaration

---

[2] "[T]he Eighth Circuit has applied Minnesota state law to settlement enforcement disputes arising in this District." *Turner v. Otis Elevator Co.*, No. 21-cv-203, 2023 WL 2424272, at *4 (D. Minn. Mar. 9, 2023).

persuasively explains the reputational harm of the video to him and the Church. *See* Felton Decl. in Supp. ¶ 3, Dkt. No. 31. Because Plaintiffs have shown that they are likely to prevail on their breach-of-settlement claim, the first *Dataphase* factor weighs in favor of an injunction.[3]

### B.  Irreparable Harm

The second *Daphase* factor is irreparable harm. *Dataphase* requires that the movant show "the threat of irreparable harm to the movant in the absence of relief." *Lexis-Nexis*, 41 F. Supp. 2d at 956. To demonstrate a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir.1996). Plaintiffs have met their burden to show irreparable harm here.

"Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002); *see also Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013) ("Because damage to one's reputation is a harm that cannot be remedied by a later award of money damages, the threat of reputational harm may form the basis for preliminary injunctive relief."). As Plaintiffs explain, Defendants' video declaring victory damages Plaintiffs' reputation by leaving viewers with the impression that Plaintiffs' defamation case lacked merit. In turn, the declaration of victory and other content in the video suggest that the defamatory statements forming the basis for Plaintiffs' lawsuit are true. *See, e.g.*, Felton's Decl. in Supp. Ex. C, at 13–14, Dkt. No. 31-2 ("I always bring the facts proofs and receipts

---

[3] Plaintiffs have also shown that Jives likely breached his obligations to keep the settlement conference discussions confidential.

6

if we was going to go to court . . . everything was gonna be laid out so it is what it is."). As Felton explains, he has "been contacted by numerous people in the community about this video, including members of our church, wanting answers to questions about how Jives 'won' the case." Felton's Decl. in Supp. ¶ 3, Dkt. No. 31. He persuasively states that the video "has been enormously disruptive to my relationship with our community and Church members." *Id.* Considering that Jives published the video only one day after the settlement conference, how quickly the video has circulated among members of the community, and Defendants' considerable social media following,[4] Plaintiffs would likely suffer further reputational damage—and thus irreparable harm—absent the requested injunction.[5]

### C.     Balance of the Harms

Turning to the third *Dataphase* factor, courts consider "whether the irreparable harm to the movants outweighs any potential harm to the nonmovants should the injunction issue." *Cedar-Riverside People's Ctr. v. Minn. Dep't of Hum. Servs.*, No. 09-cv-768, 2009 WL 1955440, at *3 (D. Minn. July 6, 2009). Plaintiffs request an injunction requiring Defendants to take down the September 12, 2024 video, and abide by the terms of the settlement agreement. *See* Pls.' Proposed Order, Dkt. No. 33. Defendants did not identify any harms that would result from Plaintiffs' requested injunction at the hearing. If the video is monetized, Defendants could lose some YouTube revenue from taking it down. But Defendants' loss, if any, is minimal compared to Plaintiffs' reputational damage. Therefore, the balance-of-the-harms *Dataphase* factor favors Plaintiffs.

---

[4] Jives has 114,000 subscribers. Felton's Decl. in Supp. ¶ 2, Dkt. No. 31.
[5] Given his conduct, Jives would likely publish more content absent an injunction.

### D. The Public Interest

The fourth and final *Dataphase* factor is the public interest. The public has an interest in enforcing contractual obligations, such as the parties' settlement here. *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1019 (8th Cir. 2022). This interest is heightened because settlement agreements are greatly favored and court stipulations as to a settlement agreement are contracts made with "more solemnity and with better protection . . . than an ordinary contract made out of court." *Unitarian Universalist Church of Minnetonka v. City of Wayzata*, 890 F. Supp. 2d 1119, 1124 (D. Minn. 2012). And there is a public interest in preventing breaches in the confidentiality of this District's settlement conferences. Therefore, this final public-interest factor also favors Plaintiffs. Because all four *Dataphase* factors weigh in Plaintiffs' favor, the motion is granted.

## II. Bond

Federal Rule of Civil Procedure 65(c) states that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Although courts ordinarily require a bond, "exceptions have been made where the defendant has not objected to the failure to require a bond or where the damages resulting from a wrongful issuance of an injunction have not been shown." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engr's*, 826 F.3d 1030, 1043 (8th Cir. 2016). Given that any monetary damage to Defendants would be minimal and Defendants' stipulation to the injunction without requesting a bond, the Court will exercise its discretion to waive Rule 65(c)'s bond

8

requirement. *See First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 769 (D. Minn. 2018) (similarly waiving a bond requirement).

## ORDER

For the reasons set forth above, IT IS HEREBY ORDERED: Plaintiffs' Motion for Temporary Restraining Order, Dkt. No. 28, is **GRANTED** as follows:

1. Defendants shall immediately cease any public discussions of the settlement, settlement conference, or this lawsuit;

2. Defendants shall immediately remove any videos and publications discussing the settlement or settlement conference;

3. Defendants shall strictly comply with all terms of the settlement agreement;

4. Plaintiffs may publicly file on the court website the term sheet that was previously confidential;

5. This Order shall remain in effect until a further order is issued;

6. Plaintiffs are not required to post a bond under Rule 65(c); and

7. This Court issued an oral order granting Plaintiffs' motion at the September 13, 2024 hearing. This Order replaces and supersedes that oral order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 20, 2024          ___s/David T. Schultz___
                                   DAVID T. SCHULTZ
                                   U.S. Magistrate Judge