# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Bishop Wayne R. Felton, individually, and The Holy Christian Church International,<br><br>Plaintiffs,<br><br>v.<br><br>De'Mario Jives, individually, and DeMajio Media LLC,<br><br>Defendants. | Court File No. 23-cv-467 (DTS)<br><br>**DECLARATION OF PAMELA A. DATTILO REGARDING PLAINTIFFS' ATTORNEY'S FEES AND COSTS**<br><br>**[IN RESPONSE TO COURT ORDER, DKT. NO. 88]** |

I, Pamela Abbate Dattilo, declare:

1. I am an attorney duly licensed to practice law in the State of Minnesota. I am currently a Partner at CrossCastle PLLC and am lead counsel for the Plaintiffs, Bishop Wayne R. Felton and The Holy Christian Church International, in the above-captioned matter.

2. Pursuant to this Court's Order dated December 12, 2024 (Dkt. No. 88), I am submitting an affidavit detailing costs and fees associated with (1) moving for a temporary restraining order; (2) actions to enforce the settlement; and (3) moving for sanctions.

1

3. Throughout this case, my standard hourly rate has ranged from $450 to $500/hour, however, I provided services to the Plaintiffs in this case at a discounted rate of $400/hour due to the Church's non-profit status. I have 16 years of experience litigating in state and federal court. I have conducted over 25 trials and evidentiary hearings. I have submitted numerous fee petitions over the years, including to this Court. I am generally familiar with the rates charged by Twin Cities firms to litigate cases similar in size and scope to this one.

4. Kathyrn Rogness is a paralegal at CrossCastle, PLLC. She obtained her Juris Doctor degree in 2007 and has maintained a law license with the State of Minnesota since 2007 (currently voluntarily suspended). Her hourly rate at $150/hour on this matter is very low given her qualifications and credentials.

5. Based on my experience and understanding of the hourly rates charged by other law firms in the Twin Cities, the rates charged by the Plaintiffs' legal team for this case are reasonable and consistent with rates charged by other firms for similar services provided by lawyers of comparable skill, experience, and reputation in Minneapolis. *See, e.g., Marquette Bus. Credit, Inc. v. Gleason*, No. 14-cv-354 (MJD/LIB), 2014 U.S. Dist. LEXIS 180827, at *6 (D. Minn. Dec. 22, 2014) (Davis, C.J.) (determining, ten years ago, that rates charged for attorney time in this district between $180 and $600 per hour have been deemed reasonable). Our

rates are actually lower than other comparable firms' rates because of the discount we provided to the Plaintiffs in this case.

6. The Settlement Conference occurred on September 11, 2024. Our actions to enforce the settlement and obtain a Temporary Restraining Order/Injunction began the very next day—September 12. The actions described in this Declaration and in the attached **Exhibit A** reflect *over three months* of activities all aimed at enforcing the settlement and seeking sanctions for Defendants' conduct.

7. While the legal issues involved in the underlying motions were not complex, the various motions at issue here were time intensive. My paralegal spent dozens of hours identifying, analyzing, downloading, and preserving videos posted by the Defendant. We filed three separate legal briefs, seven substantive declarations and numerous exhibits in support of the various motions. Additionally, there were five separate in-person hearings between September 12, 2024 and December 30, 2024 (motion for TRO; motion to enforce settlement/for sanctions; contempt hearing; second hearing on motion to enforce settlement; second hearing on motion for sanctions). The motions were further complicated by various letters and "motions" filed by the Defendants, including their counsel's motion to withdraw.

8. Since the Settlement Conference (Dkt. No. 25), there have been *64 new filings* with this Court—all of which pertain to enforcement of the settlement and requests for sanctions. (*See* Dkt. Nos. 26-89.)

9. Since September 12, 2024, we have written multiple demand letters complete with lists of violative content and asking the Defendants to self-correct their conduct. We had to spend hours analyzing and collecting lists of content violations and confirming the citations were true and correct. The Defendants actions – or inactions – in failing to remove violative content, failing to follow court orders, and generating further violative content caused a firestorm of attorneys' fees and costs to seek relief from this Court.

10. The following chart reflects the total hours worked and rates charged for the work that was performed within the three specific categories identified by the Court in Dkt. No. 88.

| Timekeeper | Hourly Rate | Total Hours | Total Fees by Timekeeper |
|---|---|---|---|
| Pamela A. Dattilo *Partner* | $400.00 | 45.4 | $19,920.00 |
| Nicholas Nelson *Partner* | $400.00 | 2.3 | $920.00 |
| Kathryn Rogness *Paralegal* | $150.00 | 51.1 | $ 7,005.00 |
|  | - | **98.8** | **$ 27,845.00** |

11. Attached as **Exhibit A** is a true and correct copy of a report itemizing invoices from CrossCastle to the Plaintiffs from September 12, 2024, through the

present. Exhibit A includes the date the services were performed, the name of the timekeeper/professional, the actual time recorded for the task, and a description of the task(s) performed.

12. We made minimal redactions to certain time descriptions in **Exhibit A** to remove information that would divulge privileged information.

13. I removed all items from **Exhibit A** that do not fall directly into the three categories of activities/motions authorized by the Court's fee award.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 30, 2024.

                                                         */s/ Pamela A. Dattilo*
                                                       Pamela Abbate Dattilo