# EXHIBIT A

## Dkt. 88 (Sanctions Order)

RECEIVED
AUG 0 1 2025
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA


SCANNED
AUG 0 1 2025
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
AUG 0 1 2025
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Bishop Wayne R. Felton and The Holy Christian Church International,

    Plaintiffs,

v.

De'Mario Jives and DeMajio Media LLC,

    Defendants.

Case No. 23-cv-467 (DTS)

**ORDER**

    Plaintiffs Bishop Wayne R. Felton and the Holy Christian Church International (the Church) sued Defendants De'Mario Jives and DeMajio Media LLC for defamation. Claiming that Defendants violated the terms of a confidential settlement agreement, a preliminary injunction, and this District's Local Rules, Plaintiffs move for sanctions. Finding that Plaintiffs proved several violations, the Court grants the motion for sanctions in part, awarding Plaintiffs $50,000 as a compensatory civil-contempt sanction along with attorneys' fees and costs.

## FACTS

    Felton is the senior pastor of the Holy Christian Church International, based out of St. Paul, Minnesota. Felton Decl. ¶ 1, Dkt. No. 31 (Felton's First Decl.). Plaintiffs brought this action in February 2023, alleging that Jives had published several videos and social media posts "containing wildly false and defamatory accusations against the Bishop— which include everything from an alleged grooming of women in the Church for sexual affairs, to covertly and hypocritically engaging in homosexuality, to implied pedophilia, to allegations that the Bishop exiled two female members from the Church because they

married Muslim men." Compl. ¶ 3, Dkt. No. 1. The parties reached a confidential settlement on September 11, 2024. See Minute Entry, Dkt. No. 27. As a part of the settlement, Defendants agreed:

   a. to remove and delete all posts, statements, and other content concerning or related to Bishop Wayne R. Felton, his family, or Holy Christian Church International;

   b. not to make any further posts, statements, or other content concerning or related to Bishop Felton, his family, or the Church;

   c. not to initiate interaction with Bishop Felton, his family, or the Church, and from visiting their current and future homes and churches;

   d. not to sell, distribute, or transfer, any information from its current or future online platforms to any other person, blogger, or entity concerning or related to Bishop Felton, his family, or the Church; and

   e. in the event that they breach any of the above terms (a through d, inclusive) after the parties have executed the settlement agreement, to be liable for a confession of judgment in the amount of $100,000 per violation.

Felton's First Decl., Ex. A ¶ 1, Dkt. No. 36 (Settlement Agreement). The day after the parties reached this confidential settlement agreement, Jives hosted a YouTube Live video where he repeatedly declared victory. Felton's First Decl. ¶ 2; Felton's First Decl., Ex. C at 11, Dkt. No. 31-2 ("I'm telling you hear me the report is Victory."), told his viewers that he did not need to pay anything to settle the case, Felton's First Decl., Ex. C at 6, 8, claimed that the judge was irritated with Felton, id. at 9, and suggested that third parties watched or listened to the confidential settlement conference, id. at 3, 9.[1]

In response, Plaintiffs moved for a temporary restraining order. Pls.' Emergency Mot. TRO, Dkt. No. 28. The Court granted Plaintiffs' motion, entering a preliminary

---

[1] A prior order describes the factual content of that YouTube Live video in more detail. See Order at 2, Dkt. No. 38 (Injunction Order). This Order presumes familiarity with that prior order.

2

injunction against Defendants. Minute Entry, Sep. 13, 2024, Dkt. No. 35; Injunction Order. That order specifically directed Defendants to "strictly comply with all terms of the settlement agreement" and "immediately cease any public discussions of the settlement, settlement conference, or this lawsuit." Injunction Order at 9.

Despite the injunction, Jives posted further content regarding the lawsuit and Felton. For example, on September 14, Jives defended his September 12 victory video without explicitly mentioning the case or Felton. Dattilo Decl., Ex. E at 3, Dkt. No. 45-5. Jives has also "posted several [other] new videos making inferences and innuendos regarding [Felton] and this case on his YouTube channel." Felton Decl. ¶ 9, Dkt. No. 75 (Felton's Third Decl.). Some content posted by Jives has been less circumspect. On November 6, Jives hosted a roughly two-hour YouTube Live show about the election. Near the end of that video, he spent eight to nine minutes discussing the case, directly mentioning Felton. *Id.* ¶ 10. In that video, "Jives reaffirms that he is the purveyor of truth" and "states emphatically he did not lie, has proof of his [allegedly defamatory] statements, and engaged in journalism." *Id.* ¶ 13.

Plaintiffs have also endeavored to identify content that Defendants were required to remove and delete pursuant to the settlement agreement and preliminary injunction. On September 20, Plaintiffs' counsel e-mailed Defendants' counsel requesting that Jives remove all content related to Felton, his family, or the Church. Dattilo Decl., Ex. B at 2, Dkt. No. 45-2. That e-mail identified 71 pieces of such content. *Id.* at 2–7. On September 23, Defendants' counsel responded that Jives had removed the identified

3

content. Dattilo Decl., Ex. C at 2, Dkt. No. 45-3.[2] In a letter to the Court, Jives further represented that "I am fully committed to complying with the [settlement] agreement and have already removed all relevant videos as instructed. I am diligently reviewing any additional content that may need attention and ensuring compliance with all directives." Defs.' Exs. in Supp. Notice of Dismissal of Pls.' Emergency Mot. TRO at 1, Dkt. No. 67 (Jives Letter). However, some of that content had been set to private rather than being deleted. Dattilo Decl., Ex. D at 2–3, Dkt. No. 45-4. Moreover, on November 11, Plaintiffs filed a declaration identifying more than 60 pieces of content—referring to Felton, his family, or the Church—that had not been removed and deleted. Felton's Third Decl., Ex. A, Dkt. No. 76.

On November 12, Magistrate Judge Leung heard Plaintiffs' motion to enforce the settlement agreement. *See* Minute Entry, Nov. 12, 2024, Dkt. No. 77. Later that day this Court heard Plaintiffs' motion for sanctions. *See* Minute Entry, Nov. 12, 2024, Dkt. No. 79. Jives represented himself at both hearings. *See* Dkt. Nos. 77, 79. DeMajio Media did not appear.[3] Magistrate Judge Leung issued a Report and Recommendation recommending enforcement of the settlement agreement, which this Court adopted. *See* Order, Dec. 3, 2024, Dkt. No. 84.

---

[2] Defendants' counsel filed a motion to withdraw in October 2024. *See* Mot. to Withdraw, Dkt. No. 50. That motion was granted, Order, Dkt. No. 60, and Jives currently represents himself *pro se*. DeMajio Media is unrepresented.

[3] Non-lawyers cannot represent entities in federal court. *Steele v. City of Bemidji*, 257 F.3d 902, 905 (8th Cir. 2001); *see also Rechtzigel v. Simon*, No. 20-cv-2378, 2021 WL 2043218, at *1 (D. Minn. May 21, 2021) ("A non-attorney cannot represent a separate legal entity *pro se* in federal court, even if the non-attorney is authorized to conduct business on behalf of the entity.").

4

## ANALYSIS

### I.   Sanctions

Plaintiffs move for sanctions, requesting an award of $700,000 as a monetary sanction against Defendants. Federal courts possess certain inherent powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962)). That includes the power to issue sanctions when a party violates a court order. *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). Such civil-contempt sanctions may be imposed "to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Id.* at 504–05. "When a sanction is designed to coerce a recalcitrant party to comply, the sanction should be payable to the court, rather than to the opposing party." *Chaganti & Assocs., P.C. v. Nowotny,* 470 F.3d 1215, 1224 (8th Cir. 2006). When a civil-contempt sanction is intended to be compensatory, the sanction must be designed to remedy the complainant's actual loss. *Walman Optical Co. v. Quest Optical, Inc.*, No. 11-cv-96, 2012 WL 3248150, at *8 (D. Minn. Aug. 9, 2012). "A civil-contempt sanction, however, must not be punitive." *Id.* (citing *United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 830–31 (1994)).

"A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Chicago Truck Drivers*, 207 F.3d at 505. "Once a violation has been established, the burden shifts to the non-movant to show 'an inability to comply.'" *Walman Optical Co.*, 2012 WL 3248150, at *4 (quoting *Chicago Truck Drivers*, 207 F.3d at 505).

5

### A.     Violations

Plaintiffs have proven by clear and convincing evidence at least three violations of this Court's preliminary injunction and a violation of this District's Local Rules.

First, this Court's preliminary injunction directed Defendants to "immediately remove any videos and publications discussing the settlement or settlement conference." See Minute Entry, Sep. 13, 2024. Despite this order, Defendants did not remove the victory video from Facebook for twelve days. Felton Decl. ¶ 11, Dkt. No. 44 (Felton's Sec. Decl.). Moreover, Jives only removed the video from Facebook after receiving a demand letter. Id.

Second, that injunction required Defendants to strictly comply with the settlement agreement, including "remov[ing] and delet[ing] all posts, statements, and other content concerning or related to Bishop Wayne R. Felton, his family, or Holy Christian Church International." Settlement Agreement ¶ 1(a). A week after this Court ordered Defendants to comply with the settlement, Plaintiffs' counsel sent an e-mail identifying 71 pieces of content that violated Paragraph 1(a) of the settlement agreement. Dattilo Decl., Ex. B at 2–7. On November 11, almost two months after the Court entered its injunction, Plaintiffs identified more than 60 pieces of content that violated Paragraph 1(a) of the settlement agreement. Although Jives has endeavored to remove content specifically identified by Plaintiffs, see, e.g., Jives Letter at 1, Jives was required to affirmatively identify, remove, and delete content to comply with this Court's order. That Plaintiffs could identify 61 pieces of content in violation of that injunction almost two months after it was issued is sufficient to prove Defendants' failure to comply.

6

Third, the settlement agreement and injunction prohibited Jives from "mak[ing] any further posts, statements, or other content concerning or related to Bishop Felton, his family, or the Church." Settlement Agreement ¶ 1(b). Despite this order, Jives has continued to produce content discussing this lawsuit, Felton, and the Church. On September 14, he defended his victory dance video. Dattilo Decl., Ex. E at 3. After that, Jives continued to make "inferences and innuendos" regarding the lawsuit and Felton. Felton's Third Decl. ¶ 9. Circumspect comments on social media still violate Jives's obligations. Most notably, Jives's November 6 video spent almost ten minutes discussing the lawsuit, with direct references to Felton and the Church. *Id.* ¶ 10.[4]

Fourth, Jives breached the confidentiality of the mediation and settlement agreement. This District's Local Rule 16.5(d) protects the confidentiality of dispute resolution communications. There is no dispute that Jives understood that the settlement discussions and agreement were confidential. Despite this, his victory video explicitly revealed a term of the confidential settlement agreement—that he did not have to pay anything—and represented the mediator's perspective on the merits of the case. These are serious violations of the confidentiality of settlement proceedings.[5]

---

[4] To the extent Jives disputes whether the victory dance video and subsequent content violate the terms of the settlement agreement—as enforced by this Court's injunction—the Court is unpersuaded. A settlement agreement is subject to the rules of contractual interpretation. *Bos. Sci. Corp. v. Sprenger*, 903 F. Supp. 2d 757, 762 (D. Minn. 2012). If the language of a settlement is unambiguous, "then courts discern the parties' intent from the plain language alone." *Id.* A video declaring victory in a lawsuit against Felton and the Church—regardless of Jives's intent—is plainly content "concerning or related to" them.
[5] None of Jives's filings or representations demonstrated an inability to comply with the injunction, settlement agreement, or this District's Local Rules.

7

## B. Compensatory Sanctions

As this Court explained when granting the injunction, Jives's September 12 video caused reputational damage to Felton and the Church. Injunction Order at 6–7. The initial video resulted in Felton being "contacted by numerous people in the community about this video, including members of our church, wanting answers to questions about how Jives 'won' the case." Felton's First Decl. ¶ 3. According to Felton, additional videos and Plaintiffs' enforcement activities have "gotten the attention of numerous bloggers." Felton's Third Decl. ¶ 9. As a result, other "social media influences in [Felotn's] community also ramped up their efforts to follow and report on this case, increasing the exposure of information supposedly made confidential under the Settlement Agreement." *Id.*; *see also id.* ¶ 15 ("Major bloggers have picked up this story and are talking about it on their platforms. In fact, the views of these videos have been watched by over 10,000 people cumulatively and shared by countless others on their social media platforms."). In short, Felton's declarations adequately show that Defendants' violations of this District's Local Rules, this Court's preliminary injunction, and the settlement agreement, have caused harm to his reputation.

Having carefully reviewed the record, the Court awards Plaintiffs $50,000 to compensate them for Defendants' violations. Several considerations guide the amount of this sanction. To start, the parties agreed pursuant to the settlement agreement that Defendants would be "liable for a confession of judgment in the amount of $100,000 per violation." Settlement Agreement ¶ 1(e). In a somewhat analogous case, a court in this District entered judgment in the amount of $650,000 based on the terms of a settlement agreement. *See Godes v. Skipperliner Indus., Inc.*, No. 07-cv-4277, 2010 WL 3862817,

at *3 (D. Minn. Sept. 10, 2010), *R. & R. adopted sub nom. Godes, Godes v. SkipperLiner Indus., Inc.*, No. 07-cv-4277, 2010 WL 3842562 (D. Minn. Sept. 28, 2010). The court in *Godes* reasoned that "[e]ntry of judgment and awarding damages in the amount of $650,000.00 was anticipated by Settlement Agreement and Mutual Release if Defendant Skipperliner failed to abide by its other terms." *Id.* at 3. Based on *Godes*, Plaintiffs request $100,000 per violation. But there are important differences. In *Godes*, the $650,000 reflected the anticipated sales price for selling a ship. *Id.* at 1 ("Both sales periods anticipated a sale price of at least $600,000."). In other words, the $650,000 judgment seems to have fairly reflected plaintiffs' estimated loss. By contrast, there is less evidence here that $100,000 per violation is soundly based on an estimate of reputational damages for any violation of the settlement, regardless of the nature of that violation. Moreover, other considerations support awarding compensation below this $100,000 figure.

Although the record includes considerable evidence of reputational harm, much of it stems from Jives's pre-settlement conduct. *See* Felton's Sec. Decl. ¶¶ 2–5. For example, Felton describes how Jives's pre-settlement social media content caused members of the Church to leave, his removal from board seats, and the cancellation of speaking engagements. *Id.* ¶¶ 1–5. There is not the same quantum of concrete evidence regarding the harm caused by Jives's post-settlement conduct. *See, e.g., id.* ¶ 7 (describing the victory dance video as "enormously disruptive"). This makes sense. According to Felton, Jives "has published numerous lengthy videos and social media posts containing wildly false and defamatory accusations" since December 2022. *Id.* ¶ 2. The additional views on videos not taken down and circumspect comments are no doubt harmful, but less so than Jives's pre-settlement conduct. And the amount of

9

compensation must be calibrated based on harm caused by post-settlement violations because civil-contempt sanctions are not punitive. *Walman Optical Co.*, 2012 WL 3248150, at *10. In light of this record, $700,000 or even $100,000 would be excessive.

Finally, Felton has received some non-monetary relief. The Court allowed him to file a public copy of the settlement. *See* Injunction Order. It also provided him with an opportunity to respond to members of the Church. *See* Order Enforcing Settlement, Dec. 3, 2024, Dkt. No. 84. This non-monetary relief should remediate some of the damage caused by Jives's post-settlement conduct, in turn reducing the need for monetary compensation. In summary, an award of $50,000 fairly reflects the evidence of reputational harm specifically flowing from Jives's post-settlement conduct.

### C.   Coercive Sanctions

Although civil-contempt sanctions may be designed to coerce future compliance, *Chicago Truck Drivers*, 207 F.3d at 505, the Court declines to adopt a coercive sanction here. The Court has enforced the settlement agreement, so Jives is warned that Paragraph 1(e) means that Defendants could be liable for $100,000 per violation of Paragraphs 1(a)–(d). Considering the weight of that $100,000 penalty, there is no need to adopt some additional suspended sanction or daily fine to coerce compliance.

### D.   Attorneys' Fees and Costs

Plaintiffs also request attorneys' fees and costs. The Court's inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire*, 581 U.S. at 107 (2017) (quoting *Chambers*, 501 U.S. at 44–45). Under this authority, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Schlafly v. Eagle F.*,

10

970 F.3d 924, 937 (8th Cir. 2020) (quoting *Chambers*, 501 U.S. at 45–46). When a court relies on its inherent sanction authority, it must identify a "causal link" between the "misbehavior and legal fees paid by the opposing party." *Goodyear Tire*, 581 U.S. at 108.

Jives's victory dance video alone merits shifting fees. Jives made that video the day after agreeing to the confidential settlement agreement. The confidential nature of settlement discussions is essential to encourage candor. *See, e.g.*, *Davis v. Kansas City Fire & Marine Ins. Co.*, 195 F.R.D. 33, 37 (N.D. Okla. 2000) ("The guarantee of confidentiality is essential to the proper functioning of a settlement conference program."). Revealing a confidential settlement term and representing that the mediator was on his side undermines faith in the settlement process. Moreover, this breached the terms of the settlement agreement—by making a video "concerning or related to Bishop Felton, his family, or the Church"—less than 24 hours after agreeing to not produce such content. The Court finds that this video was in bad faith and awards Plaintiffs attorneys' fees flowing from the video, including Plaintiffs' fees to file the emergency TRO, enforce the settlement, and move for sanctions. But for the victory dance video, Plaintiffs' motions would have been unnecessary.

There are related but distinct grounds to award attorneys' fees here. "Courts also have the discretion to award reasonable attorney's fees and costs to a party who has successfully moved to have another party found in contempt." *Walman Optical Co.*, 2012 WL 3248150, at *10; *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998) ("The court has inherent power to assess attorneys' fees as a sanction for willful disobedience of a court order."). Here, the Court awarded sanctions predicated on Jives's violations of the injunction and this District's Local Rules. Accordingly, Plaintiffs are entitled to

reasonable attorneys' fees to compensate them for the costs of enforcing this Court's injunction. Finally, the settlement agreement includes a provision entitling the prevailing party to reasonable attorneys' fees. Settlement Agreement ¶ 6. Because Plaintiffs are seeking to enforce the terms of the settlement agreement, granting Plaintiffs their fees and costs is consistent with this bargained-for provision.

## II. Remaining Motions

Jives filed several motions *pro se* after his counsel withdrew. First, Jives filed a motion requesting "that the TRO be dismissed, allowing the terms of our settlement to proceed as agreed." Notice of Dismissal of Pls.' Emergency Mot. TRO at 1, Dkt. No. 66. "A preliminary injunction remains in effect until a final judgment is rendered." 11 Charles A. Wright & Arthur R. Miller *et al.*, *Federal Practice & Procedure: Civil* § 2947 (4th ed. June 2024 update). Because this Order enforces the settlement and resolves Plaintiffs' motion for sanctions, the preliminary injunction is dissolved with the issuance of this Order. Accordingly, Jives's request "that the TRO be dismissed" is denied as moot.

Second, Jives moves for permission "to participate in all future hearings remotely via Zoom." Defs.' Mot. to Allow Remote Participation in all Future Hr'gs, Dkt. No. 68. Jives's in-person attendance at the November 12 hearings was mandatory. *See* Order at 3, Dkt. No. 60. The Court does not anticipate any further hearings in this case, so long as the parties comply with the terms of the settlement agreement. Accordingly, Jives's motion to participate in future hearings remotely is denied as moot. In the unlikely (and unfortunate) event that further hearings are held in this case, Jives may refile his motion to participate remotely.

12

Third, Jives moves to "vacate the temporary restraining order and settlement agreement and to dismiss all of Plaintiff's remaining claims with prejudice for failure to state cause of action and lack of standing." Def.'s Mot. to Dissolve or Vacate TRO and Settlement Agreement, and to Dismiss All Remaining Claims with Prejudice, Dkt. No. 69. Jives's request to "vacate the temporary restraining order" is denied as moot for the reasons already explained. Jives's request to vacate the settlement agreement is denied for the same reasons that Magistrate Judge Leung's Report and Recommendation was adopted. As for Jives's arguments on the merits, parties waive their right to contest the merits of the underlying case when entering into a settlement agreement. *See W. Thrift & Loan Corp. v. Rucci*, 812 F.3d 722, 724 n.3 (8th Cir. 2016) ("Rucci . . . waived his right to contest the merits of the underlying case when he entered into the settlement agreement."). Therefore, this motion is likewise denied.

Fourth, Jives moves "for an Emergency Continuance of all deadlines." Def.'s Emergency Mot. for Continuance, Dkt. No. 70. Jives's motion was effectively denied when the Court told Jives by e-mail that the November 12 hearings would not be continued. Therefore, Jives's motion is denied as moot.

### ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Sanctions (Dkt. No. 40) is **GRANTED in part** and **DENIED in part**. Plaintiffs are awarded $50,000. Defendants are jointly and severally liable for this award.

2. Defendants are jointly and severally liable for Plaintiffs' costs and fees to (1) move for a temporary restraining order; (2) enforce the settlement; and (3) move for

13

sanctions. Plaintiffs' counsel shall submit an affidavit detailing their costs and fees related to the motions within 20 days of this Order.

3. Jives's Notice of Dismissal of Plaintiffs' Emergency Motion for a Temporary Restraining Order (Dkt. No. 66) is **DENIED**.

4. Jives's Motion to Allow Remote Participation in all Future Hearings (Dkt. No. 68) is **DENIED**.

5. Jives's Motion to Dissolve or Vacate Temporary Restraining Order and Settlement Agreement, and to Dismiss all Remaining Claims with Prejudice (Dkt. No. 69) is **DENIED**.

6. Jives's Emergency Motion for Continuance (Dkt. No. 70) is **DENIED**.

7. The Preliminary Injunction (Dkt. No. 38) is **DISSOLVED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 10, 2024                    s/David T. Schultz
                                            DAVID T. SCHULTZ
                                            U.S. Magistrate Judge